1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIAM RAY MORGAN,

11              Petitioner,              No. CIV S-06-1278 GEB GGH P

12        vs.

13   ROSANNE CAMPBELL,

14              Respondent.             FINDINGS AND RECOMMENDATIONS

15   _____/

16   I. Introduction

17              Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2003 prison disciplinary conviction

19   for possession of inmate manufactured alcohol in violation of Cal. Code Regs. tit. 15, § 3016(a).

20   Petitioner argues that there was insufficient evidence to support the conviction.

21              In the answer, respondent argues that the petition is barred by the statute of

22   limitations.  Respondent also argues that the petition should be denied on the merits.  For the

23   following reasons, the court rejects respondent's argument that the petition is time barred, but

24   recommends that it be denied on the merits.

25   /////

26   /////

                                    1

II.  <u>Statute of Limitations</u>

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The statute of limitations for a state prisoner to file a habeas corpus petition challenging a prison disciplinary conviction runs from the day after he receives notice of the denial of his administrative appeal.  <u>Shelby v. Bartlett</u>, 391 F.3d 1061, 1065 (9th Cir. 2004)(citing 28 U.S.C. § 2244(d)(1)(D)).

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.

The exhibits respondent has provided in support of her claim that the instant petition is barred by the statute of limitations concern petitioner's conviction for a different rules violation, i.e. the introduction of narcotics for distribution and sales.  <u>See</u> Answer, Exhibit C. Respondent's argument regarding when petitioner's administrative appeal was denied and when he filed his state habeas petitions challenging his conviction for possession of alcohol are based

1  on a different conviction.  Accordingly, the court finds that respondent has not met her burden of

2  demonstrating that petitioner's claims are barred by the statute of limitations.  See Day v.

3  McDonough, 126 S. Ct. 1675, 1681-82 (2006) (statute of limitations is not jurisdictional and is

4  akin to an affirmative defense).  Accordingly, the court will consider the merits of petitioner's

5  claim that his conviction was not supported by sufficient evidence.

6  III.  Insufficient Evidence

7              A.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

8              The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

9  petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

10  138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

11  AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

12  standards of review to be used by a federal habeas court in assessing a state court's adjudication

13  of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263

14  (9th Cir. 1997).

15              In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

16  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

17  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

18  between "contrary to" clearly established law as enunciated by the Supreme Court, and an

19  "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

20  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

21  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

22  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

23              "Unreasonable application" of established law, on the other hand, applies to

24  mixed questions of law and fact, that is, the application of law to fact where there are no factually

25  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

26  Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

1   AEDPA standard of review which directs deference to be paid to state court decisions.  While the

2   deference is not blindly automatic, "the most important point is that an *unreasonable* application

3   of federal law is different from an incorrect application of law....[A] federal habeas court may not

4   issue the writ simply because that court concludes in its independent judgment that the relevant

5   state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

6   that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

7   1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

8   objectively unreasonable nature of the state court decision in light of controlling Supreme Court

9   authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

10          The state courts need not have cited to federal authority, or even have indicated

11   awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

12   Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

13   contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

14   unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

15   occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

16   established Supreme Court authority reviewed must be a pronouncement on constitutional

17   principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

18   binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

19          However, where the state courts have not addressed the constitutional issue in

20   dispute in any reasoned opinion, the federal court will independently review the record in

21   adjudication of that issue.  "Independent review of the record is not de novo review of the

22   constitutional issue, but rather, the only method by which we can determine whether a silent state

23   court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

24   2003).

25          The Amador County Superior Court issued a reasoned decision denying

26   petitioner's habeas petition challenging his conviction for possession of alcohol.  See Exhibits

4

1  attached to petition.  The California Court of Appeal and California Supreme Court issued

2  unexplained opinions denying petitioner's habeas petitions.  Id.  When reviewing a state court's

3  summary denial of a claim, the court "looks through" the summary disposition to the last

4  reasoned decision.  Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

5              B.  Analysis

6              Due process requires that there be "some evidence" supporting a prison

7  disciplinary that deprives a prisoner of good time credits.  Superintendent v. Hill, 472 U.S. 445,

8  455, 105 S. Ct. 2768 (1985).  This standard "does not require examination of the entire record,

9  independent assessment of the credibility of witnesses, or weighing of the evidence," but instead

10 asks "where there is any evidence in the record that could support" the challenged finding.  Id.

11             Cal. Code Regs. tit. 15, § 3016(a) provides that inmates may not inhale, ingest,

12 inject, or otherwise introduce into their body; possess, manufacture, or have under their control

13 any controlled substance, controlled medication, or alcohol, except as specifically authorized by

14 the institution's health care staff.

15             The rules violation report contains the following statement by Correctional

16 Officer Kantack, the reporting employee, regarding the circumstances of the offense:

17          On January 18, 2003, at approximately 1805 hours, while on duty as Building # 5,
            Floor # 2 Officer, conducting the evening meal release in Building # 4, I
18          conducted a search of cell A4-241, assigned to inmate Morgan, E-06775, A4-241-
            L, and inmate Luna, D-53635, A4-241-U.  I noticed, prior to entering the cell, a
19          strong odor of fermenting fruit.  During my search, I discovered, secreted in the
            upper bunk mattress, in a plastic bag, approximately three (3) gallons of what
20          appeared to be inmate manufactured alcohol (Pruno).  The substance was orange
            in color, warm to the touch, and had a strong odor of fermenting fruit.
21          Correctional Sergeant J.P. White was notified and reported to Building # 4 and
            verified the substance to be inmate manufactured alcohol, in its late stages of
22          fermentation.  The alcohol was disposed of per institutional procedure by flushing
            it down the toilet.

23

24 Answer, Exhibit B.

25             The rules violation report discusses the evidence presented at the hearing and the

26 hearing officer's findings:

SUBJECT'S STATEMENT:

Subject was read and acknowledged the charge filed against him.
Subject plead NOT GUILTY to the written charge.
Subject states, "I was out in the yard all day. I came in at 3:30 and laid down. I went to chow and when I came back there was a cell search receipt saying they found Pruno in my cellies' mattress. I asked my cellie about it. Somebody paid him to hold on to the wine until that night. I never seen it. He told the officer that night it was his wine."

WITNESSES/EVIDENCE:

Subject did request witnesses present at the hearing as is indicated on the CDC-115A. Witness # 1 Inmate Luna, D-53635). Granted: The following questions were asked of Inmate Luna by inmate Morgan through the SHO:

(Q#1) Did I have anything to do with the wine?
(A#1) No.
(Q#2) Did I know the wine was there?
(A#2) Nope.

The following questions were asked of Correctional Officer M. Kantack by the SHO.

(Q#1) In what was the inmate manufactured alcohol contained?
(A#1) A state plastic bag.
(Q#2) Is is true that inmate Luna admitted to you that the inmate manufactured alcohol was his?
(A#2) No, all I remember his saying was, "Fuck off." He was mad because I took his wine.

FINDINGS:

The Senior Hearing Officer finds subject GUILTY of the charge: CCR§ 3016(a) POSSESSION OF INMATE MANUFACTURED ALCOHOL. The evidence that supports the findings includes: The written RVR by Correctional Officer M. Kantack specifically describes that on January 18, 2003, at approximately 1805 hours, while on duty as Building # 5, Floor # 2 Officer conducting the evening meal release in Building # 4, I conducted a search of cell A4-241, assigned to inmate Morgan, E-06775, A4-241-L, and inmate Luna, D-53635, A4-241-U. I noticed, prior to entering the cell, a strong odor of fermenting fruit. During my search, I discovered, secreted in the upper bunk mattress, in a plastic bag, approximately three (3) gallons of what appeared to be inmate manufactured alcohol (Pruno). The substance was orange in color, warm to the touch, and had a strong odor of fermenting fruit. Correctional Sergeant J.P. White was notified and reported to Building # 4 and verified the substance to be inmate manufactured alcohol, in its late stages of fermentation. The alcohol was disposed of per institutional procedure by flushing it down the toilet.

The fermentation or distillation of materials in a manner consistent with the production of alcohol or the physical possession of alcohol in an

institution/facility or contract health facility. Alcohol means anything containing ethanol. Possession means it was found on the inmate's person, within the inmate's area of responsibility or evidence shows that defendant retained constructive possession. All inmates are assigned areas within their living space for storage of personal property. Any contraband found within this area is considered the responsibility of that inmate. If this area is shared with another inmate, the inmates are jointly responsible with reasonable evidence both inmates were aware of its presence. Constructive possession means one person retains control or ownership while it is in the actual possession of another. Fermentation or distillation means there is reasonable evidence that the substance had the characteristics of this process such as characteristic smell or appearance. Per CCR 3290(h), identification of alcohol by laboratory testing is not required. Identification of alcohol based upon factors such as appearance or characteristic odor can be accepted as sufficient. This finding is based upon the following preponderance of the evidence: 1) Inmate Morgan had just left his cell where a Correctional Officer could smell the presence of inmate manufactured alcohol from outside the cell; 2) Inmate Morgan's witness's statement was placed in question when the reporting employee contradicted the witness's statement that he informed the officer that the alcohol was his. The evidence, as indicated in the RVR, and witness statement, revealed a preponderance of evidence which demonstrated that S is guilty of POSSESSION OF INMATE MANUFACTURED ALCOHOL.

Answer, Exhibit B.

Petitioner argues that he did not possess the alcohol because it was found under his cellmate's mattress and his cellmate denied that petitioner was aware of it.

In People v. Rushing, 209 Cal. App. 3d 618, 257 Cal. Rptr. 286 (1989), the California Court of Appeal described the general principles of "possession" crimes:

The essential elements of the unlawful possession of a controlled substance are actual or constructive possession in an amount sufficient to be used as a controlled substance with knowledge of its presence and its nature as a controlled substance. The elements may be proven by circumstantial evidence. [Citation omitted.]

Actual of constructive possession is the right to exercise dominion or control over the contraband or the right to exercise dominion and control over the place where it is found. [Citation.] Exclusive possession is not necessary. A defendant does not avoid conviction if his right to exercise dominion and control over the place where the contraband was located is shared with others. [Citation omitted.]

209 Cal. App. 3d at 621-622, 257 Cal. Rptr. at 288-89.

The fact that the alcohol emitted a strong odor was some evidence that petitioner was aware of its presence. Because the area under the cellmate's mattress was easily accessible

1    to petitioner demonstrates that petitioner shared dominion and control of the area where the

2    alcohol was found.  The alcohol was not found, for example, in a hiding place of which only

3    petitioner's cellmate could have been aware.  In addition, the hearing officer could have

4    reasonably disbelieved Luna's testimony that petitioner was not aware of the alcohol, or found

5    that Luna's willingness to take responsibility for it did not mean that petitioner was unaware of it.

6    For these reasons, the court finds that there was some evidence to support the guilty finding.

7            The denial of petitioner's claim by the Amador County Superior Court was not an

8    unreasonable application of clearly established Supreme Court authority.  Accordingly, the

9    petition should be denied.

10           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

11   a writ of habeas corpus be denied.

12           These findings and recommendations are submitted to the United States District

13   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14   days after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17   shall be served and filed within ten days after service of the objections.  The parties are advised

18   that failure to file objections within the specified time may waive the right to appeal the District

19   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20   DATED: 3/12/07

21                                          /s/ Gregory G. Hollows
                                          _____
22                                          UNITED STATES MAGISTRATE JUDGE

23
     morg1278.157
24

25

26